IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL L. VALASEK,<br><br>               Plaintiff,<br><br>    vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, in trust for registered holders of Long Beach Mortgage Loan Trust 2006-11, asset backed certificates, series 2006-11;<br><br>               Defendant. | 4:14CV3180<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the court on Defendant Deutsche Bank National Trust Company's ("DBNTC") motion for summary judgment on all claims. ([Filing No. 56](#)). For the reasons set forth below, Defendant's motion will be granted.

## STANDARD OF REVIEW

      "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [Fed. R. Civ. P. 56(c)(2)](#). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. [Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir. 1997)](#). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. [Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999)](#).

      The moving party bears the burden of showing there are no genuine issues of material fact. [Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)](#). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or

denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal marks omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 251-52 (internal citations omitted).

STATEMENT OF FACTS

The undisputed facts are as follows:

In October of 2006, Plaintiff executed promissory notes in favor of Washington Mutual Bank ("WaMu") in connection with the purchase of a residential property in Broken Bow, Nebraska (the "Property"). On that same date, Plaintiff executed and delivered the Deed of Trust for the Property to the trustee for the benefit of WaMu. The Deed of Trust was recorded on November 30, 2006.

The Deed of Trust provides that the amounts due may be accelerated if certain specific conditions set out in Paragraph 22 are satisfied. Paragraph 22 of the Deed of Trust provides that, among other items, an acceleration notice shall be sent specifying "the action required to cure the default."

In May of 2009, WaMu assigned all right, title, interest and claim of demand in the Deed of Trust to the defendant, Deutsche Bank National Trust Company ("DBNTC"). This assignment was recorded on June 1, 2009. DBNTC appointed Steffi A. Swanson ("Swanson") as successor trustee under the Deed of Trust. Around that same time, JP Morgan Chase ("JPMC") acquired WaMu bank and succeeded WaMu's rights and interests in the promissory note and Deed of Trust.

Around January of 2007, Plaintiff was involved in an automobile accident and began to miss payments required under the Deed of Trust. After several payments were missed, a Notice of Default was filed and recorded. The Notice of Default was mailed to Plaintiff by certified mail and received on June 4, 2009.

The Notice of Trustee's Sale particularly describing the Property and the time and place of sale was published in the *Custer County Chief* (a newspaper in the county where the Property is located). It was printed once a week for five consecutive weeks, the first on July 4, 2013, and the last on August 1, 2013. The Notice stated, in pertinent part, that the Property was to be "sold to the highest bidder at the East door of the Custer County Courthouse on the 14th day of August, 2013 at 10:00 o'clock A.M." The Notice was mailed to Plaintiff by certified mail at the address specified by Paragraph 25 of the Deed of Trust, which was the Property. Plaintiff signed the return receipt for the Notice on July 15, 2013.

Michael Borders ("Borders"), an attorney retained by Swanson, attended the trustee's sale on August 14, 2013, at 10:00 am. Plaintiff and Borders were the only people present. At that time, Borders announced that the trustee's sale was postponed until September 18, 2013, at 10:00 am, and would take place at the same location. Plaintiff was present and heard Borders' announcement.

At the Custer County Courthouse on September 18, 2013, at 10:00 am, Borders announced that he was conducting a foreclosure sale and read aloud the Notice of Trustee's Sale, including the bidding instructions. Borders, Plaintiff, and Roger McClellan, who is a close friend of Plaintiff, were present. Borders announced the bid from DBNTC in the amount of $216,161.53. Borders then asked if there were any additional bids. Plaintiff inquired whether Borders would accept bids for "a lesser amount." Plaintiff was not able to bid more than the opening bid; the most he was prepared to bid was $50,000. The most McClellan was prepared to bid was around $108,000. Borders responded that he had no

instructions to accept lower offers. Thereafter, Borders announced that DBNTC, as trustee, was the highest bidder, which concluded the sale.

After the sale, Swanson executed a Trustee's Deed that granted and conveyed the Property to DBNTC. The Trustee's Deed was filed and recorded in the Office of the Register of Deeds of Custer County, Nebraska.

Prior to the Notice of Default being filed in 2009, Plaintiff signed a Loan Modification Agreement on December 26, 2008. The modification changed the principal balance on Plaintiff's mortgage and adjusted his monthly payment to reflect the new balance, but otherwise did not affect the terms of the promissory notes and Deed of Trust.

After the Notice of Default was filed, Plaintiff was notified via a letter dated August 21, 2009, that he may qualify for a trial period plan and a potential loan modification if he made required payments and satisfied other conditions. The August 21, 2009, letter stated that foreclosure would continue if Plaintiff did not comply with the trial period plan. Plaintiff failed to make the required payments during the trial period and did not receive the modification.

Plaintiff determined that if he continued submitting requests for modification, the scheduled foreclosure sales for his home would continue to be postponed. So he submitted additional modification requests from 2009 through 2013, but did not make payments on the mortgage. Each modification request was denied. Although Plaintiff missed approximately six and a half years' worth of payments, he lived in the home until 2014, several months after the trustee's sale.

LEGAL ANALYSIS

Plaintiff's complaint alleges the trustee's sale violated the Deed of Trust and Contract and Defendant violated the duty of fair dealing owed to Plaintiff. ([Filing No. 1-1 at CM/ECF p. 4](#)). Defendant responds that the trustee's sale violated neither the terms or the deed of trust nor Nebraska law, and there is no evidence supporting Plaintiff's claim for breach of the duty of good faith and fair dealing.

I. Alleged Violations of the Deed of Trust and Nebraska Trust Deeds Act.

Plaintiff's first claim alleges that DBNTC violated the Deed of Trust by failing to provide a proper acceleration notice. Specifically, Plaintiff alleges he was unaware that JPMC succeeded WaMu, ([filing no. 1-1 at CM/ECF p. 3](#)), and therefore was not certain whether the acceleration notice properly set out "the action to cure the default." ([Filing No. 57 ¶ 25 at CM/ECF p. 7](#)).

Paragraph 22 of the Deed of Trust outlined the information necessary to accelerate the amount due. Consistent with paragraph 22, the Notice of Default described the action required to cure default, explaining the payment amount must bring the obligation current and the payments were to be made to JPMC, the successor to WaMu's the rights and interests in the promissory notes and Deed of Trust. Although Plaintiff may not have known of the change in interest, the Notice properly directed Plaintiff on how to cure his default. Plaintiff has presented no evidence showing Defendant violated the terms of the Deed of Trust.

Plaintiff further alleges Defendant repeatedly failed to comply with Nebraska law in the foreclosure proceedings and trustee's sale. ([Filing No. 1-1 at CM/ECF pp. 3–4](#)). The Nebraska Supreme Court has recognized "three categories for defects in a trustee's sale conducted under a power of sale in a trust deed: (1) those that render the sale void, (2) those

that render the sale voidable, and (3) those that are inconsequential." Gilroy v. Ryberg, 667 N.W.2d 544, 553 (Neb. 2003). Violations that render a sale void "are rare and generally occur when the trustee conducted the sale, but had no right to exercise the power of sale existed." Id. at 554. One such violation occurs where there was no default on the underlying obligation. Id. In general, a sale will be "voidable" where the party seeking to set aside the sale shows that the defect caused the party to be prejudiced. Id. Therefore, to show a sale is voidable, the party asserting the defect must both a defect and resulting prejudice. Id.

Plaintiff alleges many defects, with in his Complaint and several sections of the Nebraska Trust Deeds Act are relevant to Plaintiff's claims.

1. Defects Making the Sale Void

Plaintiff alleges he was not in default of the agreement or that any existing default was caused by the defendant. (Filing No. 1-1 at CM/ECF p. 4). However, Plaintiff acknowledges that due to an accident and the economic downturn, he missed payments. (Filing No. 58-1 at CM/ECF p. 39). Plaintiff admits he understood that if he missed a monthly payment, the lender could accelerate the full amount of the loan and exercise its power of sale on the home. (Id. at CM/ECF p. 38). Plaintiff missed around six and a half years of payments, his default was not cured, (Id. at CM/ECF p. 40), and he presents no evidence showing the default was caused by the defendant. Plaintiff has failed to show a defect that would void the sale.

2. Defects Rendering the Sale Voidable

Plaintiff alleges Defendant violated Nebraska's Trust Deeds Act (the "Act"), Neb. Rev. Stat. § 76-1001 et seq. He claims (1) he did not receive the Notice of Default and is unaware of whether the Notice was filed properly; (2) he did not receive notice or have

that render the sale voidable, and (3) those that are inconsequential." Gilroy v. Ryberg, 667 N.W.2d 544, 553 (Neb. 2003). Violations that render a sale void "are rare and generally occur when the trustee conducted the sale, but had no right to exercise the power of sale existed." Id. at 554. One such violation occurs where there was no default on the underlying obligation. Id. In general, a sale will be "voidable" where the party seeking to set aside the sale shows that the defect caused the party to be prejudiced. Id. Therefore, to show a sale is voidable, the party asserting the defect must both a defect and resulting prejudice. Id.

Plaintiff alleges many defects, with in his Complaint and several sections of the Nebraska Trust Deeds Act are relevant to Plaintiff's claims.

1. Defects Making the Sale Void

Plaintiff alleges he was not in default of the agreement or that any existing default was caused by the defendant. (Filing No. 1-1 at CM/ECF p. 4). However, Plaintiff acknowledges that due to an accident and the economic downturn, he missed payments. (Filing No. 58-1 at CM/ECF p. 39). Plaintiff admits he understood that if he missed a monthly payment, the lender could accelerate the full amount of the loan and exercise its power of sale on the home. (Id. at CM/ECF p. 38). Plaintiff missed around six and a half years of payments, his default was not cured, (Id. at CM/ECF p. 40), and he presents no evidence showing the default was caused by the defendant. Plaintiff has failed to show a defect that would void the sale.

2. Defects Rendering the Sale Voidable

Plaintiff alleges Defendant violated Nebraska's Trust Deeds Act (the "Act"), Neb. Rev. Stat. § 76-1001 et seq. He claims (1) he did not receive the Notice of Default and is unaware of whether the Notice was filed properly; (2) he did not receive notice or have

knowledge of the Notice of Trustee's Sale which was published in the *Custer County Chief* and does not believe it was published or properly filed in compliance with Nebraska law; and (3) he did not receive notice of the postponement of the Trustee's Sale and such postponement was not in compliance with Nebraska's statute. (See Filing No. 1-1).

      a. Notice of Default

Sections 76-1006 & 1008 of the Act dictate that the power of sale cannot be exercised until notice of default is first filed and recorded with the proper office and a copy is mailed by registered or certified mail to the name and address designated in the notice. § 76-1006 & 1008.

Based on the evidence of record, Swanson, the trustee, filed and recorded the Notice of Default for the Property on June 1, 2009 in the Office of the Register of Deeds of Custer County, Nebraska. (Filing No. 58-2 at CM/ECF p. 31). Plaintiff received a copy of the Notice by certified mail mailed by to the Property on June 4, 2009. (Filing No. 58-2 at CM/ECF p. 34). Plaintiff has failed to show a defect in the notice of default requirements.

      b. Publication and Notice of Sale

After the notice is properly filed and served on the defaulting party, it must be published in accordance with Nebraska law. See § 76-1008 & 1007. The published notice of sale must provide the time and place of sale and describe the property to be sold. It must be published at least five times, once a week for five consecutive weeks, with the last publication placed between ten and thirty days before the sale. § 76-1007(1). At least 20 days before the sale, the Notice of Trustee's Sale must be sent by registered or certified mail to the name and address provided in the notice of default. § 76-1008.

In this case, the Notice of Trustee's Sale was published in the *Custer County Chief* first on July 4, 2013, and then each consecutive following week until August 1, 2013—thirteen days before the sale was to take place. The Notice of Trustee's Sale was mailed by certified mail to Plaintiff at the Property. Plaintiff received this Notice on July 15, 2013—thirty days before the sale was to take place. The Notice stated, in pertinent part, that the Property "will be sold to the highest bidder at the East door of the Custer County Courthouse on the 14th day of August, 2013 at 10:00 o'clock A.M." Plaintiff cannot show a defect in the publication or notification of sale requirements.

In addition, Plaintiff attended the sale at the Courthouse on August 14, 2013. So even if Plaintiff could show a defect in notice or publication, he cannot show any resulting prejudice.

c. Postponement of Trustee's Sale

Plaintiff next claims the sale was deficient because he did not have notice of the postponed sale.

Under [§ 76-1009](), the person conducting the sale may postpone the sale of all or any portion of the property for any reason. [§ 76-1009](). As long as the postponement is no longer than forty-five days beyond the day designated in the notice of sale, the person conducting the sale need only make a public declaration including the new date, time and place of sale. [§ 76-1009]().

Borders, who was conducting the sale on August 14, 2013, publicly declared that the sale was postponed to September 18, 2013 and would take place at 10:00 am at the East door of the Custer County Courthouse. Plaintiff who was present at the sale on August 14th, heard the declaration and attended the postponed sale on September 18, 2013. Plaintiff

8

cannot show that there was a defect due to the postponement in sale or that he was prejudiced if such a defect existed.

   d. Conduct of Trustee's Sale

Section 76-1009 outlines the rules for the Trustee's Sale, stating:

> On the date and at the time and place designated in the notice of sale, the trustee shall sell the property at public auction to the highest bidder. The attorney for the trustee may conduct the sale. Any person, including the beneficiary, may bid at the sale. Every bid shall be deemed an irrevocable offer.

§ 76-1009.

Plaintiff claims the sale was defective because Borders did not accept any other bids. Plaintiff, his friend McClellan, and Borders were present at the sale on September 18, 2013. The opening bid at the sale was from DBNTC in the amount of $216,161.53. Plaintiff wanted to make a bid of $50,000 while McClellan was prepared to make a bid for around $108,000. While Border did not accept these bids, under § 76-1009, he did not have an obligation to accept them: Even added together, Plaintiff and McClellan's bids were lower than the opening bid of $216,161.53. Plaintiff cannot show any legal defect in the sale.

Plaintiff has failed to show any defect in the sale of the Property sufficient to justify setting aside the sale and allowing injunctive relief. DBNTC is entitled to judgment as a matter of law on Plaintiff's first claim.

   II.   Breach of Duty of Fair Dealing

Plaintiff alleges in his complaint that the defendant did not act in good faith and did not deal fairly with the Plaintiff by denying his attempts to modify his loan. (Filing No. 1-1 at CM/ECF p. 4).

"The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract." Spanish Oaks, Inc. v. Hy-Vee, Inc., 655 N.W.2d 390, 400 (Neb. 2003). However, the *nature and extent* of an implied covenant within a given contract is measured by the justifiable expectations of the parties. Id. "Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party." Id.

"A violation of the covenant of good faith and fair dealing occurs only when a party violates, nullifies, or significantly impairs any benefit of the contract." Id. "The scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." Id. "The implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." Id.

Plaintiff claims Defendant arbitrarily denied his multiple modification requests and exceeded his justifiable expectations under the contract. However, to have a breach of the implied covenant of good faith and fair dealing, the offending party *must* "violate, nullify, or significantly impair" the plaintiff's right under the contract. See Spanish Oaks, 655 N.W.2d at 399.

Plaintiff essentially argues that the defendant breached the covenant of good faith and fair dealing by exceeding the scope of conduct allowed under an express term found in the Deed of Trust. For this argument Plaintiff points to Paragraph 16 of the Deed of Trust which states in relevant part, "[T]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in the Security Instrument are subject to any requirements and limitations of Applicable Law." (See Filing No. 59 at CM/ECF p. 7). Plaintiff reasons that this express term obligated

the defendant to comply with the Home Affordable Modification Program ("HAMP"), 12 U.S.C. 5201 et seq., and its guidelines as an applicable federal law.

The court finds this reasoning unavailing. A party does not make every federal law an express term of the contract by agreeing that federal law governs the agreement. Nevertheless, even if the court were to find that Defendant was required to comply with HAMP, Plaintiff's argument would still fail. HAMP was enacted by Congress as part of the Emergency Economic Stabilization Act and is funded through the U.S. Treasury Department's Troubled Asset Relief Program ("TARP"). The program is designed to help homeowners pay their mortgages through loan modification. Although HAMP makes it easier for a struggling homeowner to modify his or her loan, it does not guarantee modification. See Reitz v. Nationstar Mortgage, LLC, 954 F.Supp. 2d 870, 879 (E.D. Mo. 2013).[1] Instead, HAMP represents an agreement between the Federal Government and participating loan service providers and creates no private right of action. Cox v. Mortgage Elec. Registration Sys., 685 F.3d 663, 667–68 (8th Cir. 2012). Plaintiff's claim alleging Defendant failed to follow HAMP guidelines[2] must be dismissed.

Plaintiff does not otherwise allege or show that DBNTC violated, nullified or significantly impaired any other benefit under the contract. Plaintiff claims Defendant acted in bad faith by providing seemingly contradictory reasons for denying Plaintiff's requests for modification. But modification was not a guaranteed benefit of the contract. Additionally, the court notes that the plaintiff *was* granted one modification of his loan yet continued to miss payments, and he was placed on a trial period for a second modification, but failed to follow the plan's requirements. (Filing No. 57 ¶¶ 56–59 at CM/ECF p. 12). Considered in

---

[1] For a thorough discussion of the requirements for loan modification under HAMP, see Reitz v. Nationstar Mortgage, LLC, 954 F.Supp. 2d 870, 877–79 (E.D. Mo. 2013).

[2] The court notes Plaintiff's Brief in Opposition is the first time he raised this argument. Regardless, Plaintiff fails to cite any specific HAMP guideline that Defendant allegedly violated.

11

the light most favorable to the Plaintiff, the court finds that there are no facts supporting Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

THE COURT HEREBY ORDERS:

1) As to all claims alleged in the plaintiff's Complaint, the defendants' motion for Summary Judgment, ([Filing No. 56](Filing No. 56)), is granted.

2) A separate judgment will be entered in accordance with this memorandum and order.

Dated this 20th day of April, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge